IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF NORTH CAROLINA

TRACY BROWN,                    )
                                )
        Plaintiff,               )
                                )
    v.                          )        1:19CV696
                                )
KENNETH LASSITER, et al.        )
                                )
        Defendants.              )

RECOMMENDATION OF UNITED STATES MAGISTRATE JUDGE

This is a *pro se* civil rights action filed under 42 U.S.C. § 1983 by Plaintiff Tracy Brown. Plaintiff raises claims against Defendants Kenneth Lassiter and Miranda Richardson based on a search that occurred when she visited an inmate at Southern Correctional Institution in Troy, North Carolina. Plaintiff filed this action with an unsigned Complaint [Doc. #2]. After being allowed a chance to remedy the deficiency, she filed a signed Amended Complaint [Doc. #5], which the Court will treat as the operative filing. In that Amended Complaint, Plaintiff alleges that "on or about the 16th of September 2017, she was subjected to a Complete Search aka 'Strip Search' while visiting her boyfriend at the Southern Correctional Institution located in Troy, North Carolina." (Amended Complaint, Attach., § III(A).) As a result, she "experienced total humiliation, shame, and degradation." (Id.) The Amended Complaint then alleges that it is Plaintiff's belief that Defendant Miranda Richardson, who was then the Superintendent at Southern Correctional, "ordered to Correctional Officers to conduct the search." (Id. § III(B).) The Amended Complaint adds that it is also Plaintiff's belief that "Defendant

Kenneth Lassiter retaliated by denying [Plaintiff's] visitation indefinitely." (Id. § III(C).) Defendant Lassiter was North Carolina's Director of Prisons. (Amended Complaint, § I(B).) The Amended Complaint contains no further allegations.

Following the filing of the Amended Complaint, Defendants filed answers and the parties agreed to a Joint Report [Doc. #17], which the Court adopted as to the discovery schedule. (Order [Doc. #18].) Under that schedule, discovery in the case ended on May 15, 2020, with dispositive motions due thirty days later. (Id.) On May 29, 2020, Defendants filed a Notice of Intent to File Dispositive Motions [Doc. #19]. After they received two extensions of time to file such motions, Defendants filed a Motion for Summary Judgment [Doc. #24] on August 21, 2020. Plaintiff did not initially respond despite receiving an extension of time to do so, but did eventually file a Response [Doc. #33] months later after being cautioned by the Court that a failure to respond would result in a dismissal based on a failure to prosecute. Defendants filed a Reply [Doc. #34] and their Motion for Summary Judgment is now before the Court for a decision.

I. Summary Judgment Standard

Summary judgment is appropriate when no genuine issue of material fact exists. A genuine issue of fact exists if the evidence presented could lead a reasonable fact-finder to return a verdict in favor of the non-moving party. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 255 (1986). A court considering a motion for summary judgment must view all facts and draw all reasonable inferences from the evidence before it in the light most favorable to the non-moving party. Id. The proponent of summary judgment "bears the initial burden of pointing to the absence of a genuine issue of material fact." Temkin v. Frederick County

Comm'rs, 945 F.2d 716, 718 (4th Cir. 1991) (citing Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986)). If the movant carries this burden, then the burden "shifts to the non-moving party to come forward with facts sufficient to create a triable issue of fact." Id. at 718-19 (citing Anderson, 477 U.S. at 247-48). A mere scintilla of evidence supporting the non-moving party's case is insufficient to defeat a motion for summary judgment. See, e.g., Shaw v. Stroud, 13 F.3d 791, 798 (4th Cir. 1994); see also Anderson, 477 U.S. at 248 (non-moving party may not rest upon mere allegations or denials).

## II. Parties' Facts

As set out above, the allegations in Plaintiff's Amended Complaint are sparse and consist of nothing more than an allegation that Plaintiff sought to visit her boyfriend at Southern Correctional, that she was strip searched, that she believes that Defendant Richardson ordered the strip search, and that she believes Defendant Lassiter denied her visitation privileges because she complained about the incident. The filing includes no details and no facts to support Plaintiff's belief that Defendant Richardson ordered the search or that Defendant Lassiter suspended her visitation privileges in retaliation for her complaint.

Defendants present various forms of evidence attached to their Motion for Summary Judgment. Regarding the search of Plaintiff's person on the date in question, Defendants present the Declarations of Defendant Richardson, Danielle King, and Veronica Leake, as well as various exhibits. Defendant Richardson states that she was not present for the search of Plaintiff, did not know Plaintiff would be visiting that day, did not order her to be searched, and was not aware of the search until a couple of days or so later when Plaintiff contacted her to see why her visitation privileges had been suspended. (Defendants' App'x [Doc. #26], Ex.

A, ¶¶ 6, 7.) King and Leake state that they were the persons who searched Plaintiff when she arrived at Southern Correctional. (Id., Exs. B(2), C(2).) Both report that they did not strip search Plaintiff and that they were never asked to do so. (Id. Exs. B ¶ 17, C ¶ 15.) Instead, they state that they conducted a routine search of Plaintiff in accordance with the standard policy that applied to visitors seeking to enter Southern Correctional at the time. (Id. Exs. B ¶¶ 7, 15, C ¶¶ 5, 13.) That policy stated that visitors were told that they and their belongings would be search and asked if they would consent to the search. (Id. Exs. B, ¶ 8, C ¶ 6.) If they did, they were then taken to a secure location out of the view of others where two staff members of the same gender performed the search after procuring a consent to search form. (Id.) Staff members would then review the process verbally before proceeding to have the visitors place all belongings on a table. (Id.) They then had the visitors remove all outerwear such as jackets and headwear, which they searched, followed by socks and shoes, which they also searched. (Id.) Then, if the visitor was a female, they would ask that she lean forward and grasp the bottom of her bra through her shirt, pull her bra outwards from her body and shake. (Id.) King and Leake note that this was requested because contraband is often concealed in that location, and the visitor is never asked to remove her shirt. (Id.) Finally, the clothed areas of the visitors were patted or frisked over top of their clothes. (Id.) Both King and Leake make clear that a routine search is not a strip search, that they never performed a strip search, and that strip searches were not performed by correctional officers, but only by local law enforcement who were summoned to conduct the search if needed. (Id. Exs. B ¶ 16, C ¶ 14.) Anyone not consenting to a search before entering was allowed to leave the prison without being searched. (Id. Exs. B ¶ 10, C ¶ 8.) Defendants include a copy of the consent

4

form signed by Plaintiff on September 16, 2017, consenting to the search described above. (Id. Exs. B ¶ 12-14 Ex. 1, C ¶ 10-12 Ex. 1.)

As to the suspension of Plaintiff's visitation privileges, Defendant Richardson states that Plaintiff contacted her to find out why her privileges were suspended and that she informed Plaintiff that it was because Southern Correctional learned after her visit that Plaintiff was a former correctional officer who had resigned while being investigated for a Prison Rape Elimination Act allegation that was later substantiated. (Id. Ex. A, ¶ 8.) Prison policy permanently prohibits such persons from visiting prisoners. (Id. ¶¶ 10, 11; Id. Ex. A(1), § .0206(a)(1), (b).) Richardson states that employees at Southern Correctional did not know of the nature of Plaintiff's resignation at the time of her visit and that, if they had, they would have turned her away without being searched. (Id. Ex. A. ¶¶ 8, 14.)

In her Response, Plaintiff first argues that she was not given a proper opportunity to conduct discovery in the case and that Defendants filed for summary judgment very early in the litigation. She also submits an Affidavit (Plaintiff's Response, Attach. 1). In that document, she states that she "was scrip [sic] searched by Defendants, their agents, staff and employees on September 17, 2017, causing her 'breast' to be exposed and her to suffer emotional stress and trauma." (Id. ¶ 3.) She makes no further statements regarding the facts of the case, and just asserts that the Court should not grant Defendants' Motion for Summary Judgment. She also adds exhibits, including a letter sent from Defendant Lassiter to a state senator explaining that the prison system received a report that Plaintiff was strip searched in that she was asked to remove her top and bra by two female officers, that the matter was investigated, and that the investigation found no documentation or evidence of the alleged

5

strip search. (Id. Attach. 2.) The letter also addressed the matter of the suspension of Plaintiff's visitation privileges and reported that it was due to her resignation of her job as a correctional officer after admitting to a relationship with a prisoner. (Id.) The letter states that Plaintiff first reported the alleged strip search during an appeal of the suspension of privileges. (Id.)

III. Discussion

Before addressing Defendants' arguments in favor of summary judgment, the Court will first address Plaintiff's contention that she did not receive a proper opportunity to conduct discovery and that Defendants are seeking summary judgment at an early point in this litigation. As noted above, the Court set a discovery period, it ran, and Defendants filed their Motion after the conclusion of that period and after receiving extensions of time to do so. In no way can that filing be described as occurring early in this litigation. As for any lack of opportunity to conduct discovery, Plaintiff simply makes a conclusory allegation along those lines and points to no discovery that she sought, but was unable to conduct, other than to say that Defendants did not respond to all of the interrogatories she sent. In response to this allegation, Defendants provided their answers given by Defendant Richardson to interrogatories sent to her by Plaintiff. (Reply, Ex. A.) There appears nothing amiss with those answers. Counsel for Defendants reports that Plaintiff also sent to counsel a set of interrogatories for a person known as "Toby Myrick," who is not a party to the lawsuit and who counsel does not represent. (Reply at 1-2.) It is not even clear who he is or how he relates to the events in the Complaint. Therefore, this set of interrogatories does not appear to be a proper part of discovery in this case. Plaintiff's complaint of a lack of opportunity to

6

conduct discovery is unsupported and appears unfounded. Certainly, she points to nothing that would prevent a ruling on Defendants' Motion for Summary Judgment.

Turning now to that Motion for Summary Judgment, the Amended Complaint alleges that Defendant Richardson ordered two prison employees to strip search Plaintiff and that, when Plaintiff complained, Defendant Lassiter suspended her prison visitation privileges in retaliation. Both of these allegations were made on the basis of Plaintiff's belief, rather than actual knowledge. In support of their Motion for Summary Judgment, Defendants provide actual evidence that Plaintiff was searched by two prison employees (albeit not via a strip search), that Plaintiff consented to that search, that Defendant Richardson did not order them to strip search Plaintiff, and that Defendant Richardson did not actually learn of Plaintiff's visit or that any search occurred until some days later. Plaintiff's only response is an entirely conclusory allegation that Defendants and their employees strip searched her. This conclusory allegation is supported by no actual facts.

In Defendants' Reply, Defendants contend that, to the extent Plaintiff's response could be read as asserting that Defendants Richardson and Lassiter personally participated in the alleged strip search of Plaintiff, that accusation is wholly contradicted by the record. On this point, the Court notes first that Plaintiff herself alleges in the Complaint and Amended Complaint that two other persons conducted the search (whatever its nature). In addition, Defendants submitted evidence identifying those two persons as King and Leake, and Plaintiff does not disagree and instead references the statements of those persons in her Response. Indeed, it is highly improbable that Superintendent Richardson and North Carolina's Director of Prisons Lassiter fortuitously happened to be together at Southern Correctional on the day

7

Plaintiff visited and then went to conduct a strip search of her after somehow learning of her visit. Instead, the only plausible contextual reading of Plaintiff's statement is that Defendants' employees searched her and that Plaintiff contends that Defendants are responsible for their employees' actions.

Having considered Plaintiff's statement and the evidence before the Court, the Court concludes that Plaintiff's statement does not establish a genuine issue of material fact to preclude summary judgment for three reasons. First, as explained above, Plaintiff's statement cannot be fairly read to allege that Defendants Richardson and Lassiter personally participated in the search. Plaintiff's statement does not provide or cite any evidence confirming or supporting such a contention or countering Defendants' actual evidence to the contrary. Thus, Plaintiff's general assertion that she was searched by "Defendants, their agents, staff and employees" does not create a genuine issue of material fact on whether Defendants Richardson and Lassiter personally participated in the search. Given the lack of any evidence of personal involvement by Defendants Richardson and Lassiter in the search, summary judgment is appropriate.

Second, to the extent Plaintiff asserts claims against Defendants Richardson and Lassiter based on their supervisory roles, it appears that any such allegation would necessarily rely on a theory of vicarious liability or *respondeat superior*. Such theories of liability do not form a basis for a claim under § 1983, see Ashcroft v. Iqbal, 556 U.S. 662, 677 (2009), and Plaintiff cannot rely on them to defeat Defendants' Motion.

Finally, even if Plaintiff could somehow establish a basis for holding Defendants responsible for the search, Defendants have presented overwhelming evidence that Plaintiff

was subjected to a routine search, not a strip search, and that she signed a form consenting to that search. Plaintiff has not presented any facts to the contrary. She does not dispute her consent, nor does she dispute the general prison policies for routine searches and her familiarity with those policies as a former correctional officer. She does not dispute that the search was conducted by two female officers in a private area. In fact, her statement does not include any specific facts regarding the execution of that search. Such a general conclusory allegation is not enough to provide a basis on which a jury could find a constitutional violation, particularly as to Defendants Richardson and Lassiter who were not even present. See also Calloway v. Lokey, 948 F.3d 194 (4th Cir. 2020) (considering searches of prison visitors, upholding dismissal of those lacking any actionable personal involvement, noting that courts generally consider "the scope of the particular intrusion, the manner in which it is conducted, the justification for initiating it, and the place in which it is conducted" (quoting Bell v. Wolfish, 441 U.S. 520, 559 (1979), and holding that reasonable suspicion is required for conducting a strip search or body cavity search of visitors); Cates v. Stroud, 976 F.3d 972 (9th Cir. 2020) (noting that less intrusive searches, such as pat-downs, "may be conducted as a prerequisite to visitation without any individualized suspicion, given the weighty institutional safety concerns. Such searches are 'relatively inoffensive' and 'less intrusive than alternative methods,' and they may be avoided by the simple expedient of not visiting the prison." (citations omitted)). Moreover, Plaintiff has not alleged facts that would establish a violation of clearly established federal law by Defendants Richardson and Lassiter that would defeat Defendants' qualified immunity. Therefore, Defendants' Motion for Summary Judgment

9

should be granted as to Plaintiff's claim that either Defendant Richardson or Defendant Lassiter violated her constitutional rights with respect to the search.

Plaintiff's other claim is that Defendants suspended her visitation privileges because she complained about the search. However, as set out above, Defendants have provided clear evidence that the suspension was the result of Plaintiff resigning from her employment as a correctional officer under circumstances that permanently barred her from prison visitation. Plaintiff puts forth no contrary evidence and, in fact, does not even specifically address this claim in her responsive pleadings or materials, leaving Defendants' Motion for Summary Judgment uncontested on this point. It should be granted on this claim as well and this action should be dismissed.

IT IS THEREFORE RECOMMENDED that Defendants' Motion for Summary Judgment [Doc. #24] be granted and that this action be dismissed.

This, the 25th day of January, 2021.

/s/ Joi Elizabeth Peake
United States Magistrate Judge